UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TERRANCE ANTHONY NORRIS,

               Plaintiff,

    v.

JPMORGAN CHASE BANK N.A.,

               Defendant.

**MEMORANDUM & ORDER**
25-CV-03231 (HG)

**HECTOR GONZALEZ**, United States District Judge:

*Pro se* Plaintiff Terrance Anthony Norris, a banking customer of Defendant, brings this action against Defendant JPMorgan Chase Bank N.A.  Plaintiff alleges four causes of action: (i) breach of contract; (ii) breach of the implied covenant of good faith and fair dealing; (iii) conversion; and (iv) negligence.  *See* ECF No. 19 (Second Amended Complaint, "SAC").[1] Defendant moves to dismiss Plaintiff's SAC for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  *See* ECF No. 30 (Motion to Dismiss, "Mot.").  For the reasons set forth below, Defendant's Rule 12(b)(1) motion is GRANTED.

## BACKGROUND

The Court draws the following facts from the SAC and documents attached to or incorporated by reference in the SAC.[2]  Plaintiff is a customer of Defendant, who deposited three

---

[1]    Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations.  The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

[2]    The Court is "required to treat [Plaintiff's] factual allegations as true, drawing all reasonable inferences in favor of Plaintiff[] to the extent that the inferences are plausibly supported by allegations of fact." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133

money orders totaling $2,225 into his personal bank account on or about July 12, 2023.  *See* SAC ¶ 5.  Two days later, Defendant placed a restriction on Plaintiff's account "[t]o protect against potential fraud[.]"  *See id.* at 15.  That restriction prevented Plaintiff from accessing the deposited funds and certain electronic fund transfers credited to the account.  *See id.* ¶ 6.  The restriction impeded Plaintiff from timely using those funds for essential expenses, including "urgent roof repairs" to his residence.  *See id.* ¶¶ 6, 9.  Plaintiff's inability to repair his roof without those funds resulted in water intrusion, structural damage, and increased repair costs.  *Id.* ¶ 9.

Although Plaintiff requested, both in person and in writing, that the funds be released or that Defendant explain the restriction, Defendant did neither.  *See id.* ¶¶ 7, 11–13.  Defendant's representatives provided conflicting explanations for the restriction, including references to "possible fraud," but failed to involve law enforcement when asked.  *See id.* ¶ 10.  Defendant's explanation of the restriction was insufficient, "vague," and "conflicting."  *Id.*

Plaintiff alleges that Defendant's actions breached the Deposit Account Agreement ("DAA"), which the parties entered into when Plaintiff opened his account with Defendant.  *See id.* ¶ 15.  Under the DAA, Defendant agreed to "maintain account access, and follow applicable

---

(2d Cir. 2021).  The Court therefore "recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts."  *Id.*  Although the general rule is that a plaintiff may not raise new allegations in his opposition to a motion to dismiss, because Plaintiff is representing himself, the Court will nevertheless grant him some leeway by considering both the allegations in the SAC and in Plaintiff's Opposition in deciding the motion.  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Guzman v. Barr*, No. 19-cv-7163, 2021 WL 135909, at *2 (S.D.N.Y. Jan. 14, 2021) ("In addition to what is contained in the complaint, the Court may consider factual statements made in a *pro se* plaintiff's opposition to a motion to dismiss.").

laws and regulations." *Id.* ¶¶ 15–16.  Plaintiff claims Defendant breached the DAA by "seizing and withholding" Plaintiff's funds "without lawful justification." *Id.* ¶ 17.  As a result, Plaintiff suffered financial loss, property damage, and emotional distress.  *See id.* ¶ 19.

## LEGAL STANDARD

### I.     Federal Rule of Civil Procedure Rule 12(b)(1)

When a party moves to dismiss under Rule 12(b)(1) as well as on other grounds, courts "consider the Rule 12(b)(1) challenge first" because if a court finds that it lacks subject matter jurisdiction, then the Defendant's other "defenses and objections become moot and do not need to be determined." *Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019).  "A district court properly dismisses an action under [Rule 12(b)(1)] for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms. S.à.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015).  On a Rule 12(b)(1) motion, a "district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).  Furthermore, the Court must assume that Plaintiff's legal claims "would be successful on the merits." *See Clementine Co., LLC v. Adams*, 74 F.4th 77, 83 (2d Cir. 2023).

### II.    Federal Rule of Civil Procedure Rule 12(b)(6)

"In order to survive a motion to dismiss, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 99 (2d Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is plausibly alleged 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matzell v.*

3

*Annucci*, 64 F.4th 425, 433 (2d Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In making this assessment, the court must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *VR Glob. Partners, L.P. v. Petróleos de Venezuela, S.A.*, No. 24-1176, 2024 WL 4891271, at *2 (2d Cir. Nov. 26, 2024). But courts need not "accept as true" statements of "legal conclusions" in the complaint, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss under Rule 12(b)(6). *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

### III.   Plaintiff's *Pro Se* Status

A *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court's obligation "to construe a *pro se* complaint liberally" continues to apply "[e]ven after *Twombly*" established the plausibility standard for assessing pleadings. *Newsome v. Bogan*, 795 F. App'x 72, 72 (2d Cir. 2020). "A *pro se* litigant, however, is not exempt 'from compliance with relevant rules of procedural and substantive law.'" *Ramos-Nunez v. United States*, No. 14-102, 2019 WL 1300811, at *4 (S.D.N.Y. Mar. 21, 2019) (quoting *Traguth v. Zuck*, 710 F.2d 90, 96 (2d Cir. 1983)).

### DISCUSSION

### I.   The Court Does Not Have Subject Matter Jurisdiction

Federal courts have limited subject matter jurisdiction. Under 28 U.S.C. §§ 1331 and 1332, federal jurisdiction is only available when either (1) a "federal question" is presented, or (2) there is complete diversity between the parties and the amount in controversy exceeds

4

$75,000.  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

As best the Court can construe Plaintiff's allegations concerning subject matter jurisdiction, he appears to bring this action pursuant to both the Court's federal question jurisdiction under § 1331, SAC ¶ 1, and diversity jurisdiction under § 1332, Opp. at 24.[3] Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1), arguing that the Court lacks jurisdiction because Plaintiff asserts no valid claims arising under federal law and fails to plausibly allege an amount in controversy sufficient to confer diversity jurisdiction.  *See* Mot. at 17.

### A.     Federal Question Jurisdiction

Federal courts possess original jurisdiction over civil actions "arising under" federal law. 28 U.S.C. § 1331.  An action "aris[es] under federal law . . . if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689–90 (2006).

---

[3]     Although Plaintiff does not allege diversity jurisdiction in the SAC, he does allege it in the Opposition.  *See* Opp. at 24.  Given Plaintiff's *pro se* status, "the Court has also considered whether subject matter jurisdiction lies in this Court under 28 U.S.C.§ 1332."  *Mercado v. Quantum Servicing Corp.*, No. 15-cv-1500, 2015 WL 1969028, at *4 (E.D.N.Y. Apr. 29, 2015); *see also Clarkes v. Hughes*, No. 17-cv-00961, 2018 WL 5634932, at *3 (E.D.N.Y. Oct. 30, 2018) (considering the basis for diversity jurisdiction when the court cannot discern a basis for federal question jurisdiction alleged in *pro se* plaintiffs' amended complaint).

Defendant argues that there is no federal question jurisdiction here because the SAC abandons any claims Plaintiff formerly brought under the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693.  *See* Mot. at 17.  In Opposition, Plaintiff gives conflicting responses:  on the one hand, he states that he "does not raise a specific claim under EFTA in the [SAC]," ECF No. 37 (Plaintiff's Opposition, "Opp.") at 21; on the other hand, he contends that he "alleges misconduct implicating federal statutes, including Regulation E under the [EFTA]," *id.* at 23.

Although Plaintiff's prior pleadings included a claim under the EFTA, Plaintiff dropped that claim from the SAC and now brings only state claims.  *Compare* ECF No. 1 (Complaint) ¶¶ 9–11 *and* ECF No. 7 (First Amended Complaint, "FAC") ¶¶ 9–11, *with generally* SAC.  "A [*pro se* plaintiff] may voluntarily drop claims by choosing not to include them in a[n] [] amended pleading."  *Radin v. Tun*, No. 12-cv-1393, 2015 WL 4645255, at *23 (E.D.N.Y. Aug. 4, 2015); *see also Omosefunmi v. Weiss,* 198 F.3d 234 (2d Cir. 1999) (finding that "even under the relaxed pleading standard afforded to *pro se* litigants," an "express disavowal" of a claim "requires that that claim be deemed abandoned").  Accordingly, as the only claims in this action are state claims, the Court lacks federal question jurisdiction.  *See* 28 U.S.C. § 1331; *see also Skarzynska v. New York Bus. Dev. Corp.*, No. 15-cv-00140, 2017 WL 1247882, at *3 (E.D.N.Y. Mar. 31, 2017).

###### B.    *Diversity Jurisdiction*

Federal courts possess original jurisdiction over civil actions when the amount in controversy exceeds $75,000, exclusive of interest and costs, and "the suit is between 'citizens of different States.'"  *St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005) (quoting 28 U.S.C. § 1332(a)(1)).

The parties do not dispute, nor does the Court find, that complete diversity is lacking between the parties.[4]  Rather, Defendant focuses on § 1332's amount in controversy requirement. *See* ECF No. 40 (Defendant's Reply in Support of Motion; "Reply") at 15.  Plaintiff alleges a total of $4,994,738.44 in damages, including:  (i) $2,225 of withheld deposits; (ii) $25,000 in property damage; (iii) $72,000 in financial losses, including lost business opportunity and credit damage; (iv) $2 million for emotional distress; (v) $303,579 in interest; and (vi) $2,592,934.44 in punitive damages.  *See* SAC ¶ 31.  Defendant argues that the plausible amount in controversy is limited to the $2,225 money order deposits because the DAA precludes Defendant from liability for "indirect, special, or consequential damages."  Mot. at 18.

The party invoking diversity jurisdiction has the burden of showing that there is a "reasonable probability" that the claim is in excess of the jurisdictional amount.  *Scherer v. Equitable Life Assur. Soc'y of the United States*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994)).  While the

---

[4]     Plaintiff alleges that Defendant, a national bank with its main office in Columbus, Ohio, is a citizen of Ohio.  *See* SAC ¶ 4; *see also OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 219 (2d Cir. 2016) ("for diversity purposes, a national bank's citizenship should be limited to the location of its main office").  Although Plaintiff alleges that he resides in South Carolina, *see* SAC ¶ 3, residency alone is insufficient to establish citizenship for diversity purposes, *see Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 54 (2d Cir. 2019).  Nevertheless, the SAC provides sufficient documentation to satisfy the Court that diversity exists among the parties because *pro se* Plaintiff appears to be a citizen of New York.  *See, e.g., Techno-TM, LLC v. Fireaway, Inc.*, 928 F. Supp. 2d 694, 697 (S.D.N.Y. 2013) ("To determine citizenship, courts consider factors including voting registration, employment, current residence, location of real and personal property, location of spouse and family, driver's license, automobile registration, tax payment and addresses, and location of a person's bank account and physician.").  Plaintiff holds a New York driver's license, *see* ECF No. 19-3 at 19; he receives New York State unemployment benefits, *see* SAC at 29; his bank statements list a Brooklyn address, *see id.* at 25; and his wife, with whom he resides, is a nurse licensed in New York and her affirmation was notarized in New York one day before the SAC's filing, *see* ECF No. 19-1 at 110–11.  And nothing in the SAC and its exhibits, or even the parties' briefs, offer any indication that Plaintiff is a resident of Ohio.  Accordingly, there is complete diversity among the parties.

Second Circuit "recognizes a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy," *Wolde–Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999), a court must dismiss the case for want of subject matter jurisdiction if "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or . . . that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction." *Tongkook*, 14 F.3d at 784.

Although "[t]he amount in controversy is determined at the time the action is commenced," if a court later determines that the true amount in controversy falls below the threshold, dismissal for a lack of subject matter jurisdiction is required. *Id.* at 784, 786. "But the test remains severe, allowing a finding that the amount in controversy falls below the threshold only in three situations: '1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of substantive law or measure of damages limits the money recoverable by the plaintiff; and 3) when independent facts show that the amount of damages was claimed by the plaintiff merely to obtain federal court jurisdiction.'" *Brown v. N.Y. State S. Ct. for 2d Jud. Dist.*, 680 F. Supp. 2d 424, 429 (E.D.N.Y. 2010) (quoting Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction* 3d § 3702).

i.    <u>Accrued Interest</u>

The $303,579 in accrued interest that Plaintiff alleges is excluded from the amount in controversy because § 1332(b) requires an amount exceeding $75,000 "*exclusive* of interest and costs." *Stiler v. Great N. Ins. Co.*, No. 07-cv-2236, 2008 WL 11517681, at *3 (S.D.N.Y. Jan. 2, 2008) (emphasis in original).

ii.       Consequential Damages

Next, a total of $2,097,000 of Plaintiff's alleged damages are consequential damages. *See* SAC ¶ 31. Consequential damages are "[l]osses that do not flow directly and immediately from an injurious act but that result indirectly from the act," also known as "indirect damages." Black's Law Dictionary (12th ed 2024); *see also Horowitz v. Am. Int'l Grp., Inc.*, 498 F. App'x 51, 54 (2d Cir. 2012) (defining indirect loss, i.e., consequential loss, as "loss arising from the results of damage rather than from the damage itself"). Here, Plaintiff's alleged property damages, financial losses, and emotional distress damages are consequential damages because they indirectly flow from Defendant's withholding of the $2,225 deposit. *See, e.g., World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 520 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009) (categorizing lost business opportunities as consequential damages); *Edwards v. Great N. Ins. Co.*, No. 03-cv-2947, 2006 WL 2053717, at *8 (E.D.N.Y. July 21, 2006) (categorizing injury to plaintiff's credit rating as consequential damages); *Abbott v. United States*, 76 F. Supp. 2d 236, 242 (N.D.N.Y. 1999), *aff'd*, 231 F.3d 889 (2d Cir. 2000) (categorizing emotional distress as consequential damages); *Comm'r v. Schleier*, 515 U.S. 323, 336 (1995) (same). Indeed, Plaintiff himself characterizes these alleged damages as "consequential losses" that resulted from Defendant's actions. SAC ¶¶ 30–31.

However, as Defendant correctly points out, Plaintiff cannot recover the consequential damages sought because the DAA bars recovery of "indirect, special, or consequential damages." ECF No. 19-1 at 134. Specifically, Section IX.B of the DAA states, in bold and capitalized letters, that Defendant "**WILL NOT BE LIABLE FOR INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES REGARDLESS OF THE FORM OF ACTION AND EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES**."

9

*Id.* (emphasis in original).  Courts have found that this contractual bar on consequential damages is "valid and enforceable" under New York law.[5]  *Serengeti Express, LLC v. JP Morgan Chase Bank, N.A.*, No. 19-cv-5487, 2020 WL 2216661, at *4 (S.D.N.Y. May 7, 2020); *see also Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 551 (1992) ("Absent a statute or public policy to the contrary, a contractual provision absolving a party from its own negligence will be enforced.").  Accordingly, none of the consequential damages alleged can plausibly be included in calculating the amount in controversy.

iii.      <u>Punitive Damages</u>

Finally, Plaintiff seeks approximately $2.59 million in punitive damages.  SAC ¶ 31.  Punitive damages "are aimed at deterrence and retribution." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003).  When a plaintiff demands both actual and punitive damages—and the plaintiff's state law claims authorize an award of punitive damages—then potential punitive damages "must be considered . . . in determining [the] jurisdictional amount." *Peoples Club of Nigeria Int'l, Inc. v. Peoples Club of Nigeria Int'l – N.Y. Branch, Inc.*, 821 F. App'x 32, 35 (2d Cir. 2020) (citing *Bell v. Preferred Life Assur. Soc'y of Montgomery*, 320 U.S. 238, 240 (1943)).  However, "punitive damages will be considered with heightened scrutiny." *Miller v. Cap. One Bank (USA) N.A.*, No. 24-cv-2834, 2024 WL 4654222, at *3 (E.D.N.Y. Nov.

---

[5]      Although the parties do not raise a choice of law issue, the Court applies state law because "where the parties are silent as to the issue of choice of law, 'it is appropriate for the Court to apply New York law—the law of the forum state—to Plaintiff's state-law claims.'" *NYQF Inc. v. Sigue Corp.*, 781 F. Supp. 3d 104, 119 (E.D.N.Y. 2025) (citing *Global Switching Inc. v. Kasper*, No. 06-cv-412, 2006 WL 1800001, at *11 n. 10 (E.D.N.Y. June 29, 2006)); *Herrschaft v. Nat'l Transportation, Inc.*, No. 21-cv-5618, 2023 WL 12056617, at *3 (E.D.N.Y. Aug. 2, 2023) ("[P]laintiffs do not address choice of law in their papers, nor has defendant, by virtue of its default.  In similar circumstances, courts in this circuit have applied the law of the forum state where the parties have failed to address the issue and also cited exclusively to the forum state's laws.").

1, 2024); *see also Nwanza v. Time, Inc.*, 125 F. App'x 346, 349 (2d Cir. 2005) ("We will not allow a plaintiff to meet the amount-in-controversy requirement by demanding $5,000,000 in punitive damages, when the only actual damages that he claims are unavailable as a matter of law"); *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1034 n.1 (2d Cir. 1972) ("[I]n computing jurisdictional amount, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages.").  The Supreme Court has set constitutional limits on the ratio of punitive damages to compensatory damages[6] that may permissibly be awarded.  *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 410.  While there is no precise mathematical formula to determine an appropriate ratio, the Supreme Court has held that "single-digit multipliers are more likely to comport with due process."  *Id.* at 425–26 (finding a punitive damages award with a 145-to-1 ratio unreasonable and disproportionate).

Under New York law, "[t]he concept of punitive damages has been sanctioned . . . in actions based on negligence."  *Martin v. Nieuw Amsterdam Prop. Mgmt., LLC*, No. 22-cv-3506, 2025 WL 1504124, at *11 (E.D.N.Y. May 27, 2025) (quoting *Home Ins. Co. v. Am. Home Prods. Corp.*, 75 N.Y.2d 196, 204 (1990)).  Here, as discussed above, Plaintiff successfully alleges only $2,225 in compensatory damages because his alleged property damages, financial losses, and emotional distress damages are consequential damages barred by the DAA, and the alleged interest accrued on the withheld funds is excluded by § 1332(b).  Yet he seeks approximately $2.59 million in punitive damages—a ratio of roughly 1,165 to 1 compared to his successfully alleged compensatory damages.  This ratio far exceeds the single-digit range the

---

[6]    "Compensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct."  *State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 416 (citing Restatement (Second) of Torts § 903, pp. 453–454 (1979)).

Supreme Court has identified as more likely to comport with due process.  *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 426.  The Court therefore declines to count Plaintiff's alleged punitive damages toward the amount in controversy.  *See KT Exp. v. Wolf Canyon of Am., Inc., USA*, No. 09-cv7123, 2010 WL 5249231, at *2 (S.D.N.Y. Dec. 17, 2010) (dismissing the case for lack of subject matter jurisdiction because plaintiffs' alleged punitive damages cannot be recovered and plaintiffs are thus unable to meet the amount in controversy requirement).

*          *          *

In sum, the only recoverable damages Plaintiff alleges to a "reasonable probability," *Scherer*, 347 F.3d at 397, are the $2,225 of withheld deposits plus a potential of approximately $20,000 of punitive damages.  Because this combined amount does not come close to meeting the $75,000 jurisdictional threshold, the Court lacks diversity jurisdiction.  *See* 28 U.S.C. § 1332(a).  Accordingly, the Court dismisses Plaintiff's claims without prejudice for lack of subject matter jurisdiction, and the Court does not reach the parties' Rule 12(b)(6) arguments.

## II.    Leave to Amend

"A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90–91 (2d Cir. 2023) (affirming denial of leave to amend).  When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Of course, an opportunity to amend is not required where, as here, "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it."  *Id.*  Thus, where "granting

12

leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

Here, the Court finds that leave to amend is unwarranted for two reasons. First, the deficiencies in Plaintiff's claims cannot be cured by amendment because the DAA has limited Plaintiff's recovery. *See Porter v. Uhler*, No. 17-cv-0047, 2019 WL 1292226, at *6–7 (N.D.N.Y. Mar. 21, 2019), *aff'd*, 790 F. App'x 329 (2d Cir. 2020). Second, Plaintiff has already amended the Complaint twice, and because the Court considered allegations raised in the Opposition as if they were included in the formal pleadings, Plaintiff has effectively already been given a third opportunity to amend his complaint. *See McKeever v. Singas*, No. 17-cv-4996, 2022 WL 5430426, at *2, *15 (E.D.N.Y. June 16, 2022) (considering allegations raised for the first time in *pro se* plaintiff's opposition in deciding a motion to dismiss and denying plaintiff leave to file a third amended complaint), *report and recommendation adopted as modified*, 2022 WL 4095558 (E.D.N.Y. Sept. 7, 2022). That is already more than the Second Circuit ordinarily requires and further leave to replead would be futile. *See Applewhite v. N.Y.C. Dep't of Educ.*, No. 21-cv-2928, 2024 WL 3718675, at *21 (E.D.N.Y. Aug. 8, 2024), *aff'd sub nom. Applewhite v. N.Y.C. Dep't of Educ.*, No. 24-cv-2131, 2025 WL 783650 (2d Cir. Mar. 12, 2025). Plaintiff is therefore denied a further opportunity to amend.

### III.    Warning About Fake Quotes and Citations

Defendant brings to the Court's attention that Plaintiff's Opposition includes citations to a nonexistent case, *GAI Consultants, Inc. v. Homestead Vill. Ltd. P'ship*, 961 F. Supp. 1437,

13

1445 (E.D. Pa. 1997), *see* Opp. at 16, and nonexistent quotations in several other cases.[7] *See* Reply at 9–10.

The Second Circuit has explained that a party's attempt to persuade a court or oppose an adversary by relying on non-existent precedent "is an abuse of the adversary system." *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024); *see also Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 464–66 (S.D.N.Y. 2023) ("A fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law."). Indeed, courts swiftly sanction attorneys who engage in this abusive practice. *See, e.g, Ramirez v. Humala*, No. 24-cv-242, 2025 WL 1384161, at *2 (E.D.N.Y. May 13, 2025) (collecting cases).

It is just as unacceptable for a *pro se* litigant to submit briefs with fake case citations as it is for a lawyer to do so. "[A]lthough courts make some allowances for a *pro se* Plaintiff's failure to cite to proper legal authority, courts do not make allowances for a Plaintiff who cites to fake, nonexistent, misleading authorities." *Dukuray v. Experian Info. Sols.*, No. 23-cv-9043, 2024 WL 3812259, at *11 (S.D.N.Y. July 26, 2024), *report and recommendation adopted,* No. 23-cv-9043, 2024 WL 3936347 (S.D.N.Y. Aug. 26, 2024). "Quite obviously, many harms flow from such deception—including wasting the opposing party's time and money, the Court's time and resources, and reputational harms to the legal system (to name a few)." *Id.*

---

[7]    For example, Plaintiff purports to quote from *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011), but the quote Plaintiff attributes to the case, "a party breaches a contract when it fails to perform a contractual duty without a valid excuse," does not exist. Opp. at 13. Similarly, the quote, "[e]ven when a contract confers decision-making power on one party, that party must act in good faith and in accordance with fair dealing," that Plaintiff attributes to *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 394 (1995), does not exist. *Id.* at 16.

The Court warns Plaintiff that any further filings with citations to nonexistent legal authority may result in sanctions, including his submissions being stricken, filing restrictions or monetary penalties being imposed, and/or his case being dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss, ECF No. 30, and DISMISSES Plaintiff's Second Amended Complaint, ECF No. 19, in its entirety without prejudice under Rule 12(b)(1). Although Plaintiff paid the filing fee, the Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United* States, 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close this case. The Clerk of Court is also directed to mail a copy of this Order to *pro se* Plaintiff and note the mailing on the docket.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
May 6, 2026

15